**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-CV-_____

DR 24F16, LLC, a Colorado limited liability company

      Plaintiff,

v.

THE CITY OF ASPEN and THE CITY OF ASPEN CITY COUNCIL,

      Defendants.

## COMPLAINT

Plaintiff, DR 24F16, LLC (the "Plaintiff"), by and through its attorneys, Garfield & Hecht, P.C., states the following for its Complaint against Defendants, the City of Aspen and the City of Aspen City Council (collectively the "Defendants"):

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff DR 24F16, LLC is a Colorado limited liability company.

2.     Defendant the City of Aspen is a Colorado Home Rule Municipality governed by the City Council, the City of Aspen Charter, the Aspen Municipal Code, relevant state statutes, and pertinent case law.

3.     Defendant the City of Aspen City Council is the legislative and governing body established by the City's Home Rule Charter, which provides, in pertinent part, that "all powers of the City shall be vested in an elective mayor and council, hereafter referred to as 'the council,'

which shall . . . determine policies[.]" Charter § 1.3. The City Council adopts laws, ordinances, and resolutions. It has final policymaking authority for the City of Aspen.

4. Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction), 28 U.S.C. §§ 2201, *et seq.* (Declaratory Judgment Act), and Rule 57 of the Federal Rules of Civil Procedure. This Court has Supplemental Jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action occurred in the State of Colorado, and because this action involves real property located in Pitkin County, Colorado.

## GENERAL ALLEGATIONS

6. In 1940, the United States Forest Service ("USFS") acquired the real property contained in the Ranger Station Subdivision, Township 10 South, Range 85 West, 6th P.M., Section 12, Block 9 and 10, Aspen Townsite, Pitkin County, Colorado as depicted on the Ranger Station Subdivision Survey attached as **Exhibit 1** (the "USFS Property").

7. The USFS Property is located in the West End of Aspen and is comprised of multiple lots and blocks as well as portions of alleys and W. Francis Street that were never improved.

8. The USFS Property was originally platted as part of the Aspen Townsite Map of 1880.

9. In 2012, officials from the USFS and the City of Aspen met to discuss the USFS' desire to redevelop the USFS Property and sell a portion of it to a third party.

2407809.1

10. The USFS asserted that, because it was an agency of the United States government, it was not subject to the City of Aspen's jurisdiction or review and that it did not need to comply with the City of Aspen's Land Use Code regarding subdivisions.

11. On May 22, 2013, the United States Forest Service recorded the Ranger Station Subdivision survey ("Survey") with the Pitkin County Clerk and Recorder at Book 103, Page 1 and 1A.

12. The Survey created five separate lots from the USFS Property.

13. The City of Aspen did not approve or sign off on the Survey creating the five lots.

14. The separate lots subdivided from the USFS Property are now known as Lots 1, 2, 3, 4, and 5 of the Ranger Station Subdivision.

15. The USFS auctioned off the five lots to private buyers.

16. Because the USFS did not go through the City of Aspen's subdivision review process, the City of Aspen claimed that the individual buyers of the lots of the Ranger Station Subdivision bought the lots without any development rights.

17. However, all of the lots of the Ranger Station Subdivision are located within the City of Aspen's Medium-Density Residential (R-6) zone district.

18. Plaintiff is the assignee of the claims asserted in this Complaint assigned to it by the subsequent purchaser of Lot 4 of the Ranger Station Subdivision.

## HISTORY OF REGULATION OF IMPACT FEES IN COLORADO

19. Colorado experienced dramatic population growth in the last decades of the twentieth century, almost doubling in size.

20. Following a nationwide trend, many local governments in Colorado resorted to impact fees and development exactions to finance public infrastructure.

21. Impact fees are legislatively enacted fees imposed on a broad category of property owners during the development process.

22. Impact fees are generally collected at the time a building permit or certificate of occupancy is issued for a new building.

23. An exaction is a requirement imposed on an *ad hoc* basis during the processing of a discretionary land use application as a condition of approval of the application.

24. Previously, the lack of explicit authority from the Colorado General Assembly regarding whether a government body could impose such fees and whether such fees violated the Takings Clause of the U.S. Constitution led to piecemeal litigation and conflicting legal precedent around such issues in Colorado.

25. In 1999, in order to provide uniformity and predictability surrounding exactions and impact fees, Colorado's General Assembly enacted the Regulatory Impairment of Property Rights Statute or Exactions Act—C.R.S. § 29-20-201 *et seq.*—attempting to codify the U.S. Supreme Court's holdings in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994).

26. The principal provision of the Exactions Act, C.R.S. § 29-20-203, codifying the holdings of *Nollan* and *Dolan* states:

> [i]n imposing conditions upon the granting of land-use approvals, no local government shall require an owner of private property to dedicate real property to the public, or pay money or provide services to a public entity in an amount that is determined on an individual and discretionary basis, *unless there is an essential nexus between the dedication or payment and a legitimate local government interest, and the dedication or payment is roughly*

*proportional both in nature and extent to the impact of the proposed use or development of such property.* This section shall not apply to any legislatively formulated assessment, fee or charge that is imposed on a broad class of property owners by a local government (emphasis added).

27. The United States Supreme Court has also adopted the Unconstitutional Conditions Doctrine which provides that local governments cannot condition a person's receipt of a governmental benefit on the waiver of a constitutional right.

28. In the context of development and building permit applications, the Unconstitutional Conditions Doctrine vindicates the Constitution's 5th Amendment right to just compensation for property when the government collects an improperly calculated impact fee when an owner applies for a building permit.

29. In 2001, Colorado's General Assembly amended the Local Government Land Use Control Enabling Act or Impact Fee Act—C.R.S. § 29-20-101 *et seq.*—to add a section that authorizes the use of impact fees but establishes limitations upon the use of such fees.

30. Under the Impact Fee Act, fees may only be imposed to fund the cost of "capital facilities," defined as

> any improvement or facility that: (a) [i]s directly related to any service that a local government or a fire and emergency services provider is authorized to provide; (b) [h]as an estimate useful life of five years or longer; and (c) is required by the charter or general policy of a local government or fire and emergency services provider pursuant to a resolution or ordinance. C.R.S. § 29-20-104.5(4)(a)-(c).

31. To set the fees, a local government must first

> quantify the reasonable impacts of proposed development on existing capital facilities and establish the impact fee or development charge at a level no greater than necessary to defray such impacts directly related to proposed development. No impact fee or other similar development charge shall be imposed to remedy any deficiency in capital facilities that exists without regard to the proposed development. C.R.S. § 29-20-104.5(2).

**DEVELOPMENT OF ASPEN'S AFFORDABLE HOUSING MITIGATION FEE**

32. The City of Aspen's Land Use Code requires the provision of affordable housing for the development of free-market single family and duplex units.

33. As a result, the City of Aspen imposes the affordable housing mitigation fee as a condition for applications to obtain development allotments.

34. Payment of the affordable housing mitigation fee is a required condition to obtaining a building permit.

35. The City of Aspen's Ordinance 1 (Series of 1990) established a formula to determine the amount of such fees.

36. Ordinance 1 (Series of 1990) assumed that for 3,000 square feet of new residential construction, such construction generates 1 Full Time Equivalent (FTE) of total employment.

37. Full Time Equivalent (FTE) is a unit of measurement standardizing the workloads of employees generated or housed by development.

38. There does not appear to be empirical data supporting how the City of Aspen arrived at its calculation in Ordinance 1 (Series of 1990).

39. The City of Aspen did not analyze or update the housing impact fee for 25 years. Standard practice suggests that impact fee studies should be updated every 5-10 years. Therefore, in an attempt to come up with a more accurate formula to calculate the affordable housing impact fee, the City of Aspen commissioned a study to be performed by RRC Associates of Boulder, Colorado.

40. The Aspen Residential Employment Generation Study was completed on March 4, 2015 (the "RRC Study").

41. The RRC Study concluded that total employment generation for a single family/duplex unit with 3,000 square of floor area is estimated to be an average of 0.445 workers or .445 FTEs of total employment.

42. The March 4, 2015 RRC Study concluded that all types of new residential construction generate a certain number of employees.

43. Aspen's City Council then adopted Ordinance No. 43 (Series of 2015), directing City of Aspen staff to update the Land Use Code to reflect the findings in the March 4, 2015 RRC Study.

44. On October 12, 2015, the City of Aspen adopted Ordinance No. 35 (Series of 2015).

45. Ordinance No. 35 (Series of 2015) amended Land Use Code Chapter 26.460 and Chapter 26.470.

46. Generally, Ordinance No. 35 (Series of 2015), removed accessory dwelling units as a mitigation option, required the extinguishment of a Certificate of Affordable Housing Credit (AHC) in most instances, and updated the housing mitigation calculation, which resulted in a lower cash-in-lieu rate.

47. On November 10, 2015, the City of Aspen adopted Ordinance No. 37 (Series of 2015), which also amended certain sections of the Land Use Code's affordable housing regulations.

48. Per Ordinance No. 35 (Series of 2015), the updated housing mitigation calculation, however, only applied to development of a single family and duplex residence on lots with existing single-family and duplex residential developments.

49. Existing development is defined by Land Use Code Section 26.470.090.(b)(1) & (2) as

> (1) "The development of a single-family, two detached residential units, or a duplex dwelling on a lot in one of the following conditions: (a.) A lot created by a lot split, pursuant to Subsection 26.480.060(a); (b.) A lot created by a historic lot split, pursuant to Subsection 26.480.060(b), when the subject lot does not itself contain a historic resource; (c.) A lot that was subdivided or was a legally described parcel prior to November 14, 1977, that complies with the provisions of Subsection 26.480.020, Subdivision: applicability, prohibitions, and lot merger;" or (2) "The net increase of Floor Area of an existing single-family, two detached residential units on a single lot, or a duplex dwelling, regardless of when the lot was subdivided or legally described and regardless of whether demolition occurs."

50. There are four options to mitigate affordable housing requirement for existing development.

51. If an applicant chooses to provide a fee-in-lieu payment or extinguish a Certificate of Affordable Housing Credit in a FTE amount, the employee generation rate is scheduled as .16 employees per 1,000 square feet of new construction under a total of 4,500 square feet.

52. The employee generation rate used in the calculation for FTEs for development of a single family residence on a lot with existing development is based on the March 4, 2015 RRC Study.

53. In contrast, the employee generation rate used in the calculation for FTEs for development of a single family residence on a vacant lot is based on 30% of the maximum floor area of the new development divided by 400. This formula is derived from two areas in the Land Use Code.

54. Land Use Code Section 26.470.100(i)(2) states that the development of a single, free-market residence is required to have one affordable residence representing a minimum of thirty percent (30%) of the project's total floor area.

55. Land Use Code Section 26.470.050(f) states that whenever an affordable housing mitigation requirement is required to be converted between a number-of-employees requirement and a square-footage requirement, regardless of direction, the following conversion factor shall be used: 1 employee = 400 square feet of net livable area.

## HISTORY OF RANGER STATION SUBDIVISION DEVELOPMENT ALLOTMENTS

56. In 2015, three different land use applications were submitted for the lots of the Ranger Station Subdivision.

57. The City of Aspen took the position that, although the Ranger Station Subdivision Lots were not owned by a common developer, it would subject the lots to the "inclusionary" zoning requirement contained in Land Use Code Section 26.470.100(i)(1). The "inclusionary" zoning requirement for a multi-lot subdivision requires 60% of the units and 30% of the project's floor area to be developed as physical units of affordable housing.

58. In the case of the Ranger Station Subdivision Lots, the "inclusionary" zoning requirement would have required that three of the five lots be built with physical units of affordable housing.

59. Pursuant to Land Use Code Section 26.470.100(i)(2), in cases where a "project consists of only one (1) free-market residence, then a minimum of one (1) affordable residence representing a minimum of thirty percent (30%) of the project's total floor area and deed-

restricted as a Category 4 'for sale' unit, according to the provisions of the Aspen/Pitkin County Affordable Housing Guideline, shall qualify."

60. Because the Ranger Station Subdivision Lots are owned by different entities and not large enough to build more than one dwelling on each lot, the owners could not practically or feasibly mitigate the affordable housing requirement with physical units.

61. The City of Aspen adopted Ordinances Nos. 16, 32, and 33 (Series of 2015) so as to allow the Ranger Station Subdivision Lots to meet the "inclusionary" zoning requirement without building physical units of affordable housing. Ordinances Nos. 16, 32 and 33 (Series of 2015) granted development allotments to the Ranger Station Subdivision Lots on the condition that the affordable housing mitigation requirement would be met *via* a cash-in-lieu fee based on 30% of each lot's maximum floor area.

62. Ordinances Nos. 16, 32, and 33 (Series of 2015) describe the formula to calculate the cash-in-lieu fee this way:

> [t]he amount of mitigation currently required for each lot is calculated as follows, based upon subsection 26.470.040(b), Residential Development – sixty percent (60%) affordable, of the Land Use Code: Max. Allowable Floor Area x .3 = AH Floor Area Required / AH Floor Area Required / 400 = Full Time Equivalent Employees ("FTEs")/ FTEs * Category 4 Cash-in-Lieu Rate = Total Amount Due.

63. Put another way, the formula to calculate FTEs for new development subject to the inclusionary zoning requirement is to divide the square footage of the new improvements by 400.

64. The formula to calculate the FTE found in Ordinance Nos. 16, 32, and 33, is not based on empirical data or related to the March 4, 2015 RRC Study.

65. There is no rational basis for calculating the figure for FTEs for developments classified as "inclusionary zoning," differently from how the figure for FTEs is calculated for development of a single family residence on a lot classified as "existing development."

66. Because the City of Aspen uses two different formulas to arrive at a figure for FTEs, the cash-in-lieu affordable housing mitigation rate for development of a single family residence on a vacant lot is five times as much as the cash-in-lieu affordable housing mitigation rate for a single family residence of a lot with existing development.

67. There is no empirical data that demonstrates that the number of employees generated by development of a single family residence on a vacant lot is five times greater than the number of the employees generated by development of a single family residence on a lot with existing development.

68. The City of Aspen has no rational basis to treat development of a single family residence on a vacant lot and the development of a single family residence on a lot with existing development differently when calculating FTEs, which in turn impacts the cash-in-lieu affordable housing mitigation rate.

69. On December 31, 2019, the assignor of the Plaintiff submitted its building plans to the Building Department for the City of Aspen seeking approval and the issuance of the required building permits to construct a single-family residence on each of the lots.

70. The building plans submitted were deemed completed by the Building Department for the City of Aspen on January 9, 2020

71. On January 25, 2021, the City of Aspen Building Department approved the building plans but conditioned the issuance of the required building permit on the payment of an employee cash-in-lieu mitigation impact fee of $755,278.34.

72. The calculation of the impact fee for each lot was based on the "inclusionary" employee mitigation cash-in-lieu impact fee contained in Aspen Land Use Code Section 26.470.100 applying to the development of a single-family residence on Lot 4 of the Ranger Station Subdivision.

73. On January 25, 2021, the assignor of the Plaintiff paid the City of Aspen the required employee cash-in-lieu mitigation impact fee in the amount of $755,278.34 as a condition of obtaining the issuance of the building permits necessary to commence construction of the single-family residences on Lot 4 of the Ranger Station Subdivision.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment pursuant to F.R.C.P. 57 and 28 §§ U.S.C. 2201, *et seq*.)**

74. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

75. The affordable housing mitigation impact fee imposed on the Plaintiff as a condition of obtaining the issuance of a required building permit constitutes an "impact fee" as defined in C.R.S. § 29–20–104.5.

76. The building permit required for new construction of a single-family residence on Lot 4 of the Ranger Station Subdivision constitutes a "development permit" as defined in C.R.S. § 29–20–103.

77. An actual controversy exists between the Plaintiff and Defendants within the federal question jurisdiction of this Court regarding the affordable housing mitigation impact fee

imposed by the City of Aspen as a condition of approving and issuing a building permit for Lot 4 of the Ranger Station Subdivision.

78. The Plaintiff has standing C.R.S. § 29–20–104.5(7) to file an action for declaratory judgment to determine whether the affordable housing impact fee complies with the provisions of C.R.S. § 29–20–104.5.

79. Plaintiff seeks a declaration of its rights relating to the affordable housing mitigation impact fee imposed by the City of Aspen as a condition of approving and issuing the building permit for Lot 4 of the Ranger Station Subdivision. In particular, Plaintiff seeks a declaration that:

(a) The City of Aspen quantified the reasonable impacts of proposed development of the single-family residences and duplexes on existing capital facilities and established the amount of impact fee or development charge necessary to defray such impacts directly related to proposed development when it commissioned the "Aspen Residential Employment Generation Study" performed by the RRC Study;

(b) The affordable housing mitigation impact fee imposed on Lot 4 is improperly calculated under C.R.S. § 29–20–104.5;

(c) The affordable housing mitigation impact fee was imposed on Lot 4 to remedy alleged deficiencies in capital facilities the City of Aspen without regard to the reasonable amount necessary to defray the impacts directly related to the proposed development of a single family residence or duplex;

(d) The City of Aspen is seeking to evade limitations of the Unconstitutional Conditions Doctrine by conditioning approval of the building permits issued for Lot 4 on

13

the imposition and payment of the improperly calculated affordable housing mitigation fees;

(e) The affordable housing mitigation impact fee does not satisfy the constitutional requirement that the City of Aspen's mitigation demands must have an essential nexus and rough proportionality to the impacts of proposed development under *Nollan v. California Coastal Com.*, 48 US § 825, 107 S.Ct. 3141, 97 L. Ed. 2d 677 and *Dolan v. City of Nygard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L. Ed. 304;

(f) The imposition of an affordable housing mitigation fee greater than that necessary to defray the reasonable impacts of proposed development of a single family residence on a vacant lot constitutes an unlawful taking of the Plaintiff's property without compensation in violation of the 5th Amendment of the United States Constitution;

(g) The City of Aspen should refund to Plaintiff the amount of the affordable mitigation fee wrongfully imposed and collected with interest thereon from the date collected; and, therefore,

(h) Judgment is entered in favor of the Plaintiff in an amount equal to the wrongly charged and collected affordable housing fee with interest thereon from the date collected from the Plaintiff.

## SECOND CLAIM FOR RELIEF
### (C.R.C.P. 106(a)(4))

80. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

2407809.1

81. The assignor of the Plaintiff has paid the affordable housing mitigation fee and is proceeding with development without prejudice to its right to challenge the affordable housing fee under C.R.C.P. 106 pursuant to C.R.S. § 29–20–104.5(7).

82. Pursuant to C.R.C.P. 106(a)(4), this Court has supplemental jurisdiction over the subject matter of this action.

83. The Defendants abused their discretion and acted in an arbitrary and capricious manner by:

   (a) Imposing an affordable housing mitigation fee without regard to the reasonable amount necessary to defray the impacts directly related to the proposed development of single-family residences on Lot 4.

   (b) Improperly imposing an affordable housing mitigation fee to evade limitations of the Unconstitutional Conditions Doctrine by conditioning approval of the building permit on the Plaintiff's payment of a mitigation fee that is improperly calculated.

   (c) By improperly calculating an affordable housing mitigation fee that does not satisfy the requirements that the City of Aspen's demand have an essential nexus and rough proportionality to the impacts of the proposed development of single family residences on Lots 4 and 5.

84. Plaintiff is adversely affected and has no plain adequate or speedy remedy otherwise provided by law.

## THIRD CLAIM FOR RELIEF
### (Violations of Substantive Due Process Rights pursuant to 42 U.S.C. § 1983)

85. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

86. The Plaintiff possessed, and at all relevant times has possessed, certain rights and interests in Lot 4, including but not limited to, rights to the use and enjoyment of Lot 4.

87. The City of Aspen's arbitrary imposition of the improperly calculated affordable housing mitigation fee deprives the Plaintiff of property rights without due process of law as guaranteed by the 14th Amendment to the United States Constitution.

88. The City of Aspen's imposition of the improperly calculated affordable housing mitigation fee is arbitrary, capricious and irrational under applicable due process standards, and the imposition of the fee bears no rational relation to the reasonable amount to defray impacts directly related to the proposed development of a single family residence on Lot 4.

89. By depriving Plaintiff of property rights without proper due process of law, the Defendants have deprived Plaintiff of its 14th Amendment guaranteed substantive due process rights possessed by them under the United States Constitution as related to Lot 4.

90. As a result of such denial, Plaintiff is entitled to damages, costs, interest and attorneys' fees pursuant to 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF
### (Violations of Equal Protection of the Law)

91. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

2407809.1

92. The Equal Protection Clause of the 14th Amendment of the United States Constitution and Article 2, Section 25 of the Colorado Constitution prohibit the City of Aspen from denying any person within Aspen the equal protections of its laws.

93. Under the Equal Protection Clause of the 14th Amendment of the United States Constitution and Article 2, Section 25 of the Colorado Constitution the Defendants must treat a person in the same manner as others in similar condition and circumstances.

94. As applied, the Aspen Land Use Code treats property owners developing a single family residence on a vacant lot differently from similarly situated owners in Aspen developing single family residences and duplexes on lots with existing development.

95. By doing so, the Aspen Land Use impact fee treats land uses by the Plaintiff differently from other owners of real property in Aspen based on (a) the status or identity of the different owners and (b) treating similar land uses in City of Aspen differently.

96. The different treatment of single family residences on vacant lots compared to single family residences with existing development has no rational basis.

## PRAYER FOR RELIEF

97. Wherefore, the Plaintiff requests that this Court enter judgment in favor of the Plaintiff and against the Defendants for the following relief:

    (a) On Plaintiff's First Claim for Relief for Declaratory Relief pursuant to F.R.C.P. 57 and 28 §§ U.S.C. 2201, *et seq.*, declaring:

        i. The City of Aspen quantified the reasonable impacts of proposed development of the single-family residences and duplexes on existing capital facilities and established the amount of impact fee or

development charge necessary to defray such impacts directly related to proposed development when it commissioned the RRC study;

    ii.    The affordable housing mitigation impact fee imposed on Lot 4 is improperly calculated under C.R.S. § 29–20–104.5;

    iii.    The City of Aspen is seeking to evade limitations of the Unconstitutional Conditions Doctrine by conditioning approval of the building permits issued for Lot 4 on the imposition and payment of the improperly calculated affordable housing mitigation fees;

    iv.    The affordable housing mitigation impact fees do not satisfy the constitutional requirement that the City of Aspen's mitigation demands must have an essential nexus and rough proportionality to the impacts of proposed development under *Nollan v. California Coastal Com.*, 48 US § 825, 107 S.Ct. 3141, 97 L. Ed. 2d 677 and *Dolan v. City of Nygard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L. Ed. 304;

    v.    The imposition of an affordable housing mitigation fee greater than that necessary to defray the reasonable impacts of proposed development of a single family residence on a vacant lot constitutes an unlawful taking of the Plaintiff's property without compensation in violation of the 5th Amendment of the United States Constitution;

    vi.    The City of Aspen should refund to Plaintiff the amount of the affordable mitigation fee wrongfully imposed and collected with interest thereon from the date collected; and therefore,

      vii.      Judgment is entered in favor of the Plaintiff in an amount equal to the wrongly charged and collected affordable housing fee with interest thereon from the date collected from the Plaintiff; and,

(b) On Plaintiff's Second Claim for Relief, entering judgment declaring that the Defendants abused their discretion and acted in an arbitrary and capricious manner under C.R.C.P. 106(a)(4) by improperly imposing an improperly calculated affordable housing impact fee.

(c) On Plaintiff's Third Claim for Relief, judgment in favor of Plaintiff and against the Defendants finding that the imposition of the affordable housing mitigation fee as applied to Lot 4 is invalid and unenforceable because it violates the Plaintiff's property rights without due process of law as guaranteed by the 4th Amendment to the United States Constitution and awarding Plaintiff its damages, costs, interest, and attorneys' fees pursuant to 42 U.S.C. § 1983.

(d) On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff against the Defendants finding that the imposition of the affordable housing mitigation fee, is invalid and unenforceable because it violates the Equal Protection Clause contained in the 14th Amendment of the United States Constitution and Article 2, Section 25 of the Colorado Constitution; and

(e) Entering judgment in favor of the Plaintiff awarding the Plaintiff its costs, fees and such further relief as the Court deems proper.

Dated this 21st of February, 2021.        GARFIELD & HECHT, P.C.


*s/David L. Lenyo*_____
David L. Lenyo, #14178
625 East Hyman Avenue, Suite 201
Aspen, Colorado 81611
Telephone:  (970) 925-1936
Facsimile:   (970) 925-3008
E-mail: dlenyo@garfieldhecht.com
*Attorneys for Plaintiff*


Address of Plaintiff:
5200 DTC Pkwy, Suite 240
Greenwood Village, Colorado 80111

20

2407809.1